### N. C. MOSGAARD v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

December 26, 1924.

No. 24,302.

**Compensation awarded for loss of sightless eye.**

 For the removal of a sightless eye, necessitated by an industrial accident, a workman is entitled to receive compensation for the loss of an eye as provided by the Workmen's Compensation Act.

Upon the relation of the Minneapolis Street Railway Company the supreme court granted its writ of certiorari directed to the Industrial Commission to review its award of compensation in an action brought under the Workmen's Compensation Act by N. C. Mosgaard, employe, against relator, employer. Affirmed.

*Ralph T. Boardman,* for appellant.

*Clifford L. Hilton,* Attorney General, and *Hugo V. Koch,* for respondent.

[1] Reported in 201 N. W. 545.

LEES, C.

Certiorari to review an award of compensation made by the Industrial Commission.

The sole question to be determined may be thus stated: When, in the course of his employment, an accidental injury to a workmen's eye necessitates its removal, does the workman, totally blind in that eye since childhood, become entitled to compensation as provided by the following portion of section 14, chapter 82, p. 96, L. 1921, "For the loss of an eye, sixty-six and two-thirds per centum of the daily wage at the time of injury during one hundred (100) weeks"?

A new phase of the subject of compensation for eye injuries is presented, although there are three cases which come close to the point raised here.

In State ex rel. Garwin v. District Court, 129 Minn. 156, 151 N. W. 910, the workman had lost the sight of one eye before his employment began. In the performance of his duties an accidental injury destroyed the sight of the other eye. Compensation for total blindness was denied, the award being limited to the amount fixed by the statute for the loss of an eye.

In Hessley v. Minneapolis S. Const. Co. 156 Minn. 405, 195 N. W. 274, one of the workman's eyes had been injured when he was a child. The eye was not blind. He could distinguish light from darkness and discern persons approaching him, but could not read with it. In the course of his employment this eye was so injured that it had to be removed. It was held that he had lost a member of the body and was entitled to the compensation he would have received if he had lost a perfect eye.

In Warheim v. Melrose Granite Co. supra, page 275, the workman received compensation for the total loss of the use of an eye. After the injury he was able to read print held at a certain angle from the eye and to recognize objects coming toward him except when they approached directly in front of him. A second injury to the same eye necessitated its removal. He was awarded full compensation on the basis of a loss of the eye. The result was that he received double compensation, but nevertheless

the second award was sustained, as it had to be unless the court declined to follow the Hessley case to its logical conclusion.

In the Hessley and Warheim cases, the workman lost something more than a sightless eyeball. In the present case that is all he lost, and the question is, should he receive the same compensation as a workman who has lost a perfect eye?

Speaking generally, compensation acts attempt to do approximate justice by making good to a certain extent the loss resulting from the impairment or destruction of the earning power of workmen, caused by industrial accidents, whether attended or not by negligence on the part of employers.

It was remarked in Madera Sugar Pine Co. v. Industrial Commission, 262 U. S. 499, 43 Sup. Ct. 604, 67 L. ed. 1091, that under compensation acts the loss to individual employes caused by accidental injuries is regarded as an expense of the operation of the business and that it is charged against the industry after the manner of casualty insurance. Viewing the statute in that light, a workman losing a sightless eye should receive compensation only for time lost in consequence of the operation for the removal of the eye. It seems illogical to award the same compensation whether the eye had the power of vision unimpaired or had always been stone blind. The fact that the compensation act contains relative injury provisions shows that the legislature did not entirely ignore the fact that the extent of the injury should be an important factor in determining the amount of compensation as fixed in the schedule.

But in the Hessley case attention was called to the plain language of the act, which gives compensation for the loss of a member of the body without reference to ability of the member to perform its natural functions. In the application of this provision, inequalities in the matter of compensation cannot be avoided. Sometimes what is equivalent to double compensation will be made. Probably no statute can be framed which will put all workmen on an equal footing. This was pointed out by Mr. Justice Holt in the Warheim case. There is manifest inequality in the operation of a law which adopts the same scale of compensation whether a useful or a useless member of the body is lost. Its seeming injustice is

strikingly illustrated by contrasting this case with the Garwin case. In that case the workman had but one good eye. He lost it and became totally blind. His earning capacity was virtually destroyed, but, under the provisions of the statute, he received no greater compensation than this workman who lost an eyeball, useless for any purpose except to fill the socket now filled with a glass eye, whose other eye is as good as it was before the accident and whose earning capacity has not been impaired in the slightest degree. The inequalities are glaring, but, if they are to be removed, it must be by legislation. Our duty is to take the law as we find it and administer it in accordance with the plain meaning of the language employed.

The award of compensation is affirmed.

STONE, J. (dissenting.)

To me, it seems not to have been the intention of the Workmen's Compensation Act to allow compensation for the loss of a wholly useless member of the body. In the Hessley and Warheim cases, we were considering the loss of members which, at the time of the last injury, had a substantial remaining use. They were of appreciable aid in the functioning of their bodies and thereby added to the physical capacity and employability of their possessors. That very important and determinative element is absent from this case—hence this dissent.