**IACONE v. CARDILLO, Deputy Commissioner, Second Compensation District, et al.**

**Civ. No. 11100.**

United States District Court,
E. D. New York.

May 9, 1952.

Arthur Gutman, New York City, for plaintiff.

Galli & Locker, New York City, for defendants, Northern Dock Co. Inc. and Travelers Ins. Co.

Frank J. Parker, U. S. Atty., Brooklyn, N. Y. (by: Nathan Borock, Asst. U. S. Atty., Brooklyn, N. Y.), for defendant, Frank A. Cardillo.

BYERS, District Judge.

There are three motions in this cause, all of which present the question of whether the award made to the plaintiff and contained in the compensation order of the Deputy Commissioner, dated August 24, 1950, should be sustained.

The first is by the plaintiff for summary judgment according to the prayer of his complaint, which seeks to set aside the order and award; the second is for an order affirming the same at the instance of the Deputy Commissioner; and the third is for an order granting summary judgment in favor of the defendants, Northern Dock Company, Inc. and The Travelers Insurance Company, who, although not named in the complaint, seem to be present as defendants.

The single question presented concerns the adequacy of the award made to the plaintiff under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., based upon the removal of his left eye on October 27, 1949 as a result of an injury sustained by him on April 27, 1943, and which award involved the following elements:

(a) Total disability from October 27, 1949 to December 11, 1949, inclusive;

(b) The sum of $400.00 because "claimant was furnished with an artificial left eye, resulting in a serious facial disfigurement," that sum being in addition to the compensation for temporary total disability.

The award further recites:

"That claimant having had industrial blindness in the left eye due to a previous injury and no additional loss of vision having resulted from the injury of April 27, 1943, the employer and carrier are not liable for the payment of compensation for the loss of the left eye except as indicated above."

It is undisputed that on or about August 16, 1940 the plaintiff suffered a non-industrial accident to his left eye, a laceration which created a detachment of the retina and in consequence of which he had no vision in that organ.

It is urged by the plaintiff that the loss of the left eye should be compensated under the statute as though he had lost an eye capable of performing its natural functions, and to sustain the contention, he relies upon certain decisions of the New York courts in which compensation awards involving similar conditions were under review, namely:

Flanigan v. Hunt Engineering Co., 268 App.Div. 838, 50 N.Y.S.2d 254, 255. This was a claim under the Compensation Law of the State of New York, where such an award was affirmed. The opinion contains the following:

"The evidence is that while, prior to the injury, claimant had but some 3/200 *central* vision in his right eye, still he possessed a fairly good field or peripheral vision and that this, combined with what central vision he had, was valuable and useful from an industrial standpoint."

There is no such evidence in this record.

Riegle v. Fordon, 1948, 273 App.Div. 213, 76 N.Y.S.2d 523. This case is squarely in favor of the position taken by the plaintiff. It appeared that claimant's right eye was totally blind before his accident, and the argument against the award was to the effect that "since the eye was not a useful member no award could be made for its loss as a member." The majority of the court said that the statute made no such distinction, Workmen's Compensation Law, McK.Consol. Laws, c. 67, § 15, subd. 3, and that,

"If the word 'useful' is to be interpolated it should be done by the Legislature. Moreover, * * * most people would prefer to retain and not lose a natural eye even though the eye may be sightless. An artificial eye may well produce discomfort and irritations. And · beyond this there usually remains with the average person the hope that the advancement of medical science may provide a way for restoration of sight. These considerations should not be ignored by judicial interpolation."

The dissenting opinion contains the following:

"The scheduled award which has been made is necessarily based upon the premise of a permanent partial disability which the undisputed evidence shows to be non-existent. The 'member' of claimant's body which was 'lost' was not his right eye as an organ of vision for it had been totally and permanently without power of vision for many years prior to the enucleation of its remaining structures. Its lens had been removed long before the accident which occasioned the removal of what remained. The Statute makes it clear to me that the scheduled loss of an eye contemplates a resulting loss of some use of it as an organ of vision (citing the same provision of the statute). It would seem that only such a loss can incur a permanent partial disability. But, in any event, the scheduled loss is non-compensable unless it causes some permanent disability. * * *"

Redman v. Iaculli, 273 App.Div. 835, 76 N.Y.S.2d 525. This case follows the one above cited.

Truesdell v. Albany Hospital for Incurables, 262 N.Y. 662, 188 N.E. 110 does not seem to involve the loss of an eye which, prior to its removal, was wholly deficient as an organ of vision, the prior disability being less than complete.

■ These cases have been referred to because they seem to embrace all that the New York courts have said on the subject and those views are helpful but, of course, not authoritative in the construction of a federal statute, although the language and the intended purpose of both statutes are quite similar.

The brief filed for the Deputy Commissioner contains a very complete list of state court decisions which seem to have dealt with the same question presented by this record. The citations are too numerous to repeat here, but apparently they reveal a conflict of opinion such as that to be observed in the quotations above included from the case of Riegle v. Fordon.

■ Seemingly this is a matter of first impression under this statute and I cannot avoid the conclusion that there must be a difference in the award of compensation for the loss of a seeing eye and one which does not serve as an organ of vision; and since the statute seeks to provide compensation for disability—and the removal of an eye which is incapable of functioning as such cannot in any true sense constitute disability —the award which has been made by the Deputy Commissioner in this case was in accordance with the proof as to the consequences of the removal of the useless eye, within requirements of the statute, and is therefore proper and should be affirmed.

It results that the plaintiff's motion for summary judgment is denied, the motion to affirm the award is granted, and the motion for summary judgment in favor of the defendants is granted. All of these are to be embraced in one order, to be settled.